**MAYER BROWN LLP**
Dale J. Giali (State Bar No. 150382)
dgiali@mayerbrown.com
350 South Grand Avenue, 25th Floor
Los Angeles, California 90071-1503
Telephone:  (213) 229-9500
Facsimile:    (213) 625-0248

Carmine R. Zarlenga (*pro hac vice* forthcoming)
czarlenga@mayerbrown.com
Adam L. Hudes (*pro hac vice* forthcoming)
ahudes@mayerbrown.com
1999 K Street, N.W.
Washington, D.C. 20006-1101
Telephone:  (202) 263-3000
Facsimile:    (202) 263-5358
*Counsel with special limited appearance for*
*Defendants Stuart Raetzman, Nestlé*
*Skin Health S.A., and Galderma S.A.*

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| TRUINJECT CORPORATION, | Case No. 8:18-cv-1851-JLS-JDE |
| Plaintiff, | **DEFENDANTS STUART RAETZMAN'S, GALDERMA S.A.'S, AND NESTLÉ SKIN HEALTH S.A.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |
| v. | |
| NESTLÉ SKIN HEALTH S.A., *et al.*, | |
| Defendants. | Hearing: May 17, 2019 at 10:30 a.m. |
| | Before the Hon. Josephine L. Staton |

**TO THE UNITED STATES DISTRICT COURT AND TO PLAINTIFF AND ITS COUNSEL:**

Please note that on May 17, 2019, at 10:30 a.m. in Courtroom 10A of the United States Courthouse in Santa Ana, California, Defendants Stuart Raetzman, Nestlé Skin Health S.A., and Galderma S.A. will and do move under Federal Rule of Civil Procedure 12(b)(2) to dismiss this action for lack of personal jurisdiction.

The motion is based on this notice, the Memorandum of Law below, the accompanying exhibits, including the declarations of Stuart Raetzman and Patrick Beringer, and any oral argument presented in support of the motion.

For the reasons explained more fully in the accompanying Memorandum of Law, defendants Stuart Raetzman, Nestlé Skin Health S.A., and Galderma S.A. respectfully request dismissal of all claims against those defendants for lack of personal jurisdiction.

In accord with Local Rule 7-3, counsel for the parties conferred about this motion on March 1, 2019, but could not agree about the resolution of the motion.

Dated: March 11, 2019.

MAYER BROWN LLP
By: /s/ Dale J. Giali
Dale J. Giali

*Counsel with special limited appearance for Defendants Stuart Raetzman, Nestlé Skin Health S.A., and Galderma S.A.*

1

2

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ....................................................................................... 1

II.  STATEMENT OF FACTS ......................................................................... 2

    A.  Stuart Raetzman ............................................................................. 3

    B.  Nestlé Skin Health S.A. ................................................................. 3

    C.  Galderma S.A. ................................................................................ 4

    D.  Truinject's Jurisdictional Allegations ........................................... 5

III.  ARGUMENT ............................................................................................. 6

    A.  Legal Standard ............................................................................... 6

    B.  Truinject Alleges No Basis To Extend General Jurisdiction Over Stuart Raetzman, Nestlé Skin Health S.A., or Galderma S.A. ................................................................................................. 7

    C.  Truinject Fails To Allege Facts Sufficient To Establish Specific Jurisdiction. ................................................................................... 8

        i.  Specific Jurisdiction Over Stuart Raetzman is Lacking ........... 9

        ii.  Specific Jurisdiction Over Nestlé Skin Health S.A. is Lacking ................................................................................... 12

        iii.  Specific Jurisdiction Over Galderma S.A. is Lacking............. 14

    D.  Neither Galderma S.A. Nor Nestlé Skin Health S.A. is Subject to Personal Jurisdiction Under an Alter Ego or Agency Theory. ...... 16

CONCLUSION........................................................................................................ 18

1
2

# <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**Cases**

5
6

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*,
    551 F.2d 784 (9th Cir. 1977) ................................................................. 7

7
8

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
    874 F.3d 1064 (9th Cir. 2017) ............................................................... 9

9
10

*Bike Builders, Inc. v. Lee*,
    2018 WL 3410003 (C.D. Cal. May 8, 2018) ........................................ 8

11
12

*Boschetto v. Hansing*,
    539 F.3d 1011 (9th Cir. 2008) ............................................................... 7

13

*Brainerd v. Univ. of Alberta*,
    873 F.2d 1257 (9th Cir. 1989) ........................................................... 2, 7

14
15

*Brook v. McCormley*,
    873 F.3d 549 (7th Cir. 2017) ........................................................ 11, 13

16
17

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) .............................................................. 8, 14, 15

18
19

*In re Chocolate Confectionary Antitrust Litig.*,
    641 F. Supp. 2d 367 (M.D. Pa. 2009) ................................................ 17

20
21

*CollegeSource, Inc. v. AcademyOne, Inc.*,
    653 F.3d 1066 (9th Cir. 2011) ............................................................... 7

22
23

*Colt Studio, Inc. v. Badpuppy Enter.*,
    75 F. Supp. 2d 1104 (C.D. Cal. 1999) ............................................ 1, 12

24

*Crystal Cruises, Inc. Moteurs Leroy-Somer S.A.*,
    545 Fed. Appx. 647 (9th Cir. 2013) ................................................... 16

25
26

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ...................................................................... 1, 7, 8

27
28

iii

*Fastpath, Inc. v. Arbela Techs. Corp.*,
   760 F.3d 816 (8th Cir. 2014)..................................................................14, 15

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) ...........................................................6, 7, 13, 14

*Iconlab Inc. v. Valeant Pharma. Int'l., Inc.*,
   2017 WL 7240856 (C.D. Cal. Apr. 25, 2017) ....................................17

*International Shoe Co. v. Washington*,
   326 U.S. 310 (1945) .........................................................................6

*Joseph Saveri Law Firm, Inc. v. Criden*,
   696 Fed. Appx. 189 (9th Cir. June 2, 2017)................................10, 14

*Kransco Mfg., Inc. v. Markwitz*,
   656 F.2d 1376 (9th Cir. 1981).............................................................12

*Nespresso USA, Inc. v. Ethical Coffee Co. S.A.*,
   263 F.Supp.3d 498 (D. Del. 2017) ................................................9, 18

*Nestle USA, Inc. v. Crest Foods, Inc.*,
   2017 WL 3267665 (C.D. Cal. July 28, 2017) ......................................9

*Peterson v. Kennedy*,
   771 F.2d 1244 (9th Cir. 1985).....................................................10, 14

*Picot v. Weston*,
   780 F.3d 1206 (9th Cir. 2015)..............................................................1

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015)............................................................16

*Rush v. Savchuk*,
   444 U.S. 320 (1980) ...........................................................2, 10, 11

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004)................................................................7

*In re Schwarzkopf*,
   626 F.3d 1032 (9th Cir. 2010).......................................................16, 17

*Shearer v. Super. Ct.*,
   70 Cal. App. 3d 424 (Cal. Ct. App. 1977).........................................12

731475547.7

iv

DEFENDANTS STUART RAETZMAN'S, GALDERMA S.A.'S, AND NESTLÉ SKIN HEALTH S.A.'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. 8:18-CV-1851-JLS-JDE

*Starbuzz Tobacco, Inc. v. Capomaccio*,
   2015 WL 12765458 (C.D. Cal. Mar. 4, 2015) ...................................................... 6

*Walden v. Fiore*,
   571 U.S. 277 (2014) ....................................................................................*passim*

*Williams v. Yamaha Motor Co. Ltd.*,
   851 F.3d 1015 (9th Cir. 2017) ........................................................................... 17

**Statutes, Rules and Regulations**

Cal. Civ. Proc. Code Ann. § 410.10 .......................................................................... 6

Fed. R. Civ. P. 4(k)(1)(A).......................................................................................... 6

Fed. R. Civ. P. 12(b)(2) .................................................................................... 7, 17

731475547.7

v

DEFENDANTS STUART RAETZMAN'S, GALDERMA S.A.'S, AND NESTLÉ SKIN HEALTH S.A.'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. 8:18-CV-1851-JLS-JDE

## I.   INTRODUCTION

Truinject seeks to hale into this Court two Swiss companies—Nestlé Skin Health S.A. and its subsidiary Galderma S.A.—on the basis of virtually non-existent contacts with this forum.   What is more, Truinject seeks to assert personal jurisdiction over Nestlé Skin Health S.A.'s CEO Stuart Raetzman—who works and resides *in Switzerland*—based on sporadic emails to plaintiff Truinject and a single in-person meeting at an industry conference in Washington, D.C.   These minimal contacts are an insufficient basis for personal jurisdiction as a matter of law under recent Supreme Court and Ninth Circuit precedent. *See, e.g.*, *Picot v. Weston*, 780 F.3d 1206 (9th Cir. 2015) (affirming dismissal for lack of personal jurisdiction in California where the defendant attended two meetings in California and sent emails to the plaintiff, a California resident).

Significantly, Truinject concedes that Nestlé Skin Health S.A. and Galderma S.A. are incorporated and keep their principal places of business in Switzerland, which the Supreme Court has held forecloses the application of ***general jurisdiction*** over either entity. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).   Likewise, as confirmed by the declarations of Stuart Raetzman and Patrick Beringer, neither Mr. Raetzman, Nestlé Skin Health S.A., nor Galderma S.A. have a "substantial connection" with California sufficient to permit the exercise of ***specific jurisdiction***. *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (specific jurisdiction focuses on whether "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State").   Indeed, Truinject does not allege any conduct by Mr. Raetzman or any employee of Nestlé Skin Health S.A., or Galderma S.A. in California.

None of Truinject's allegations are directed specifically at Nestlé Skin Health S.A. or Galderma S.A.   Instead, Truinject "collectively refer[s]" to Galderma S.A., Galderma Laboratories, L.P., and Nestlé Skin Health S.A. as "Nestlé Skin Health," and directs all of its factual allegations against this fictional combined entity.

Because personal jurisdiction depends on each defendant's contacts with the forum, the Supreme Court forbids a plaintiff from aggregating the contacts of multiple defendants to establish personal jurisdiction over any particular defendant. This pleading tactic, which improperly blurs the distinction between separate corporate entities, has been repeatedly rejected. *See, e.g.*, *Rush v. Savchuk*, 444 U.S. 320, 331–32 (1980) (finding it "plainly unconstitutional" to "consider[] the 'defending parties' together and aggregate[e] their forum contacts" in order to establish personal jurisdiction). Truinject does not even attempt to make the required showing of personal jurisdiction over each of the corporate defendants individually. *Brainerd v. Univ. of Alberta*, 873 F.2d 1257, 1258 (9th Cir. 1989) (explaining that personal jurisdiction over each defendant "must be analyzed individually").

In light of Truinject's failure to allege any factual basis for the exercise of personal jurisdiction in California, Stuart Raetzman, Nestlé Skin Health S.A., and Galderma S.A. respectfully request that the Court grant their motion to dismiss.

## II.   STATEMENT OF FACTS

Truinject sues Galderma S.A., Galderma Laboratories, L.P., and Nestlé Skin Health S.A., which the Complaint refers to collectively as "Nestlé Skin Health," for allegedly entering confidentiality agreements with Truinject, purportedly misappropriating trade secrets exchanged under the agreements, and allegedly infringing Truinject's intellectual property. In addition, Truinject alleges that "Nestlé Skin Health" and "Galderma" defrauded Truinject by failing to disclose "Nestlé Skin Health's" development of a competing product. Truinject also sues five individuals allegedly employed by "Nestlé Skin Health" in their individual capacities, including Mr. Raetzman, for alleged conduct that occurred in the ordinary course of the individuals' employment.

### A.    Stuart Raetzman

Stuart Raetzman is a Texas citizen who lives and works in Switzerland. Raetzman Decl. ¶ 19 (Ex. 1).  From November 2016 to the present, Mr. Raetzman served as the Chief Executive Officer of Nestlé Skin Health S.A.  *Id.* ¶ 1.  Before his tenure at Nestlé Skin Health S.A., Mr. Raetzman served from March 2015 until November 2016 as the CEO of Galderma S.A.  *Id.*

Mr. Raetzman first learned about Truinject after he received an email from Truinject's founder, Gabrielle Rios.  *Id.* ¶ 20.  Mr. Raetzman met with Ms. Rios and another Truinject officer during the March 2016 conference of the American Academy of Dermatology in Washington, D.C.  *Id.* ¶ 21.  The purpose of the meeting was to discuss the Truinject training tool.  *Id.*  Mr. Raetzman never visited Truinject's office in California and never met in California with a Truinject officer, director, or employee.  *Id.* ¶ 23.  Over the last few years, Ms. Rios sent Mr. Raetzman multiple emails, and Mr. Raetzman responded to about four or five of those emails out of courtesy to Ms. Rios and mutual acquaintances.  *Id.* ¶ 24.  Mr. Raetzman "did not direct the development of 'Holly' or 'LucyLive'" as Truinject alleges. *Id.* ¶ 25. Aside from receiving general updates on  training technology, Mr. Raetzman "had no other involvement with the development of 'Holly' or 'LucyLive.'" *Id.*  Mr. Raetzman has no contracts with Truinject.

### B.    Nestlé Skin Health S.A.

Nestlé Skin Health S.A. is a Swiss corporation formed on June 30, 2014 with its principal place of business in Lausanne, Switzerland.  Raetzman Decl. ¶¶ 3–4. Nestlé Skin Health S.A. maintains no office, factory, warehouse, bank account, or mailing address in the United States.  *Id.* ¶ 6.  Nestlé Skin Health S.A. has no employees based in the United States, pays no income taxes in the United States, keeps its books and records outside the United States, and neither owns nor leases real property in the United States.  *Id.* ¶¶ 7–10.  Nestlé Skin Health S.A. manages its own day-to-day affairs, maintains adequate capitalization, and respects all corporate

3

1   formalities.  *Id.* ¶¶ 17–18.  Nestlé Skin Health S.A., which engages in no design,

2   manufacturing, marketing, or sales activities in the United States, never sold or

3   demonstrated "Holly" or "LucyLive" in the United States.  *Id.* ¶ 11.  And Nestlé

4   Skin Health S.A. never contracted with Truinject.  *Id.*  ¶ 12.

5          In addition to Mr. Raetzman, Nestlé Skin Health S.A. employed two other

6   individuals identified in the complaint: Pierre Streit, who served from November 1,

7   2015 to September 30, 2018 as the Chief Financial Officer, and Peter Nicholson,

8   who served as a Vice President of Business Development and Strategy from January

9   1, 2017 to August 1, 2017.  *Id.*  ¶¶ 14–15.  Other than Mssrs. Raetzman, Streit, and

10  Nicholson, none of the individuals identified in the complaint ever worked for Nestlé

11  Skin Health S.A.  *Id.*  ¶ 13.

12  **C.    Galderma S.A.**

13         Galderma S.A. is a Swiss corporation with its principal place of business in

14  Cham, Switzerland.  Beringer Decl. ¶¶ 4–5 (Ex. 2).  Galderma S.A. maintains no

15  office, plant, mailing address, or bank account in the United States.

16  *Id*.  ¶ 7.  Galderma S.A. has no employees based in the United States, pays no income

17  taxes in the United States, keeps its books and records outside the United States, and

18  neither owns nor leases real property in the United States.  *Id.*  ¶¶ 8–11.  Galderma

19  S.A. controls its day-to-day affairs, respects all corporate formalities, and maintains

20  adequate capitalization.   *Id.* ¶¶ 12–14. Galderma S.A. conducts no design,

21  marketing, or sales activity in the United States.  *Id.* ¶ 15.  And Galderma S.A. never

22  sold or demonstrated the "Holly" or "LucyLive" technology in the United States.

23  *Id.* ¶ 16.

24         Galderma S.A. employed two individuals identified in the complaint: Mr.

25  Raetzman, the former CEO, and Peter Nicholson, a former director of corporate

26  development.  *Id.* ¶¶ 17–18.  Other than Mssrs. Raetzman and Nicholson, Galderma

27  S.A. never employed any of the individuals mentioned in the complaint.  *Id.* ¶ 19.

28

Except for Mr. Raetzman's March 2016 meeting with Truinject in Washington, D.C., no Galderma S.A. employee met in person with Truinject. *Id.* ¶ 22. Moreover, no Galderma S.A. employee ever met with Truinject in California. *Id.*

Galderma S.A. entered an "Exclusive Negotiation Agreement" (Ex. 4) with Truinject on November 5, 2014. *Id.* ¶ 20. Galderma S.A. and Truinject agreed to a Delaware choice-of-law provision. Ex. 4 ¶ 6(a); Doc. 39-4 at 4. No Galderma S.A. employee conducted due diligence under the November 2014 Agreement. *Id.* ¶ 21. And Galderma Laboratories L.P.—not Galderma S.A.—made payment to Truinject under the November 2014 Agreement. *Id.* ¶ 22; Ex. 3. Other than the November 2014 Agreement, Galderma S.A. never contracted with Truinject. *Id.* ¶ 24.

### D.   Truinject's Jurisdictional Allegations

In an attempt to invoke personal jurisdiction over Mr. Raetzman in his personal capacity, Truinject alleges that Mr. Raetzman "made representations to a business located in California and that such representations resulted in harm in California." Compl. ¶ 38. In support of that assertion, Truinject alleges that Mr. Raetzman made misrepresentations to Truinject at a March 5, 2016 meeting in Washington, D.C. Compl. ¶ 162. Other than the March 2016 meeting, Truinject alleges no in-person meeting between Mr. Raetzman and any Truinject employee or representative. Truinject alleges further that Mr. Raetzman contacted Truinject a handful of times regarding "Nestlé Skin Health's" interest in the Truinject technology. Compl. ¶¶ 159, 161, 177, 198. Finally, Truinject alleges upon "information and belief" that "Nestlé Skin Health began working on 'Holly' as early as 2015 at the direction of CEO Raetzman and Vice President Lask." *Id.* ¶ 208.

Truinject alleges that personal jurisdiction exists over Nestlé Skin Health S.A. and Galderma S.A. because "(1) these entities have substantial, continuous, and systematic contacts within this district, (2) maintain a broad distribution network in

1  this district, and (3) enjoy substantial income from sales of pharmaceutical and

2  dermatology products in this district." Compl. ¶ 36.  The complaint contains no

3  well-pleaded allegations of fact specific to Nestlé Skin Health S.A. or Galderma S.A.

4  that support any of these conclusory allegations.

5  **III.   ARGUMENT**

6      **A.   Legal Standard**

7      The bounds of personal jurisdiction are well-defined. In the absence of a

8  federal statute authorizing personal jurisdiction, federal courts follow state law. *See*

9  *Starbuzz Tobacco, Inc. v. Capomaccio*, 2015 WL 12765458, at *2 (C.D. Cal. Mar. 4,

10  2015); Fed. R. Civ. P. 4(k)(1)(A). Under California's long-arm statute, courts in

11  California ordinarily exercise personal jurisdiction to the extent permissible under

12  the U.S. Constitution. *See* Cal. Civ. Proc. Code Ann. § 410.10 (California courts

13  may exercise personal jurisdiction "on any basis not inconsistent with the

14  Constitution of this state or of the United States.").

15      The Due Process Clause "sets the outer boundaries of a … tribunal's authority

16  to proceed against a defendant." *Goodyear Dunlop Tires Operations, S.A. v. Brown*,

17  564 U.S. 915, 923 (2011). Under the "canonical opinion in this area," *International*

18  *Shoe Co. v. Washington*, 326 U.S. 310 (1945), the exercise of personal jurisdiction

19  requires "certain minimum contacts with [the forum] such that the maintenance of

20  the suit does not offend traditional notions of fair play and substantial justice."

21  *Goodyear Dunlop*, 564 U.S. at 923 (internal quotation omitted).

22      There are two categories of personal jurisdiction that a court may exercise.

23  First, "general or all-purpose jurisdiction" is present "where a foreign corporation's

24  'continuous corporate operations within a state [are] so substantial and of such a

25  nature as to justify suit against it on causes of action arising from dealings entirely

26  distinct from those activities.'" *Id.* (citation omitted). Second, specific jurisdiction

27  exists when "the suit 'aris[es] out of or relate[s] to the defendant's contacts with the

28

DEFENDANTS STUART RAETZMAN'S, GALDERMA S.A.'S, AND NESTLÉ SKIN HEALTH S.A.'S
MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. 8:18-CV-1851-JLS-JDE

1   forum.'" *Daimler*, 571 U.S. at 127 (citation omitted). "Personal jurisdiction over

2   each defendant must be analyzed individually." *Brainerd*, 873 F.2d at 1258.

3       Importantly, when personal jurisdiction is raised as a defense in a Fed. R. Civ.

4   P. 12(b)(2) motion, "the plaintiff bears the burden of establishing that jurisdiction is

5   proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  Where, as here,

6   the defendant submits a declaration or other evidence to preclude personal

7   jurisdiction, the plaintiff cannot "simply rest on the bare allegations of his

8   complaint." *Schwarzenegger v. Fred Martin Motor Co*, 374 F.3d 797, 800 (9th Cir.

9   2004). Instead, the plaintiff must submit evidence that demonstrates that the

10  defendant is subject to personal jurisdiction in the plaintiff's chosen forum.  *Amba

11  Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977).  Further, the

12  Ninth Circuit has held that "[a court] may not assume the truth of allegations in a

13  pleading which are contradicted by affidavit." *CollegeSource, Inc. v. AcademyOne,

14  Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (internal quotation omitted).

15      **B.    Truinject Alleges No Basis To Extend General Jurisdiction
16             Over Stuart Raetzman, Nestlé Skin Health S.A., or
               Galderma S.A.**

17      The test for general jurisdiction is whether a defendant's "affiliations with the

18  state are so 'continuous and systematic' as to render [it] essentially at home in the

19  forum state." *Daimler*, 571 U.S. at 128.  As the Supreme Court has explained, in all

20  but the most exceptional circumstances, a defendant is "at home" only in its "place

21  of incorporation and principal place of business." *Id*. at 137–38 & n.19.  Similarly,

22  "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is

23  the individual's domicile." *Goodyear Dunlop*, 564 U.S. at 924.

24      These "affiliations have the virtue of being unique—that is, each ordinarily

25  indicates only one place—as well as easily ascertainable." *Daimler*, 571 U.S. at 137.

26  Accordingly, limiting general jurisdiction to only those forums in which a

27  corporation is "at home" allows corporations "to structure their primary conduct

28

7

1  with some minimum assurance as to where that conduct will and will not render

2  them liable to suit," while "afford[ing] plaintiffs recourse to at least one clear and

3  certain forum in which a corporate defendant may be sued on any and all claims."

4  *Id*. at 137–39 (internal quotation marks omitted).

5      Nestlé Skin Health S.A. and Galderma S.A. are Swiss corporations that

6  maintain their principal places of business in Switzerland.  Raetzman Decl. ¶¶ 3–4;

7  Beringer Decl. ¶¶ 4–5. Mr. Raetzman is a Texas citizen who lives and works in

8  Switzerland.  Raetzman Decl. ¶ 19.  Because these defendants are manifestly not "at

9  home" in this forum, the exercise of general jurisdiction is precluded as a matter of

10  law.  *Daimler*, 571 U.S. at 137; *see also Bike Builders, Inc. v. Lee*, 2018 WL

11  3410003, at *4 (C.D. Cal. May 8, 2018) (Staton, J.) (holding that the court lacked

12  general jurisdiction over non-resident individual and corporation because they were

13  not domiciled in California).

14      **C.**    **Truinject Fails To Allege Facts Sufficient To Establish Specific Jurisdiction**

15

16      For specific jurisdiction to attach, "the defendant's suit-related conduct must

17  create a substantial connection with the forum State," and "the relationship must

18  arise out of contacts that the 'defendant himself' creates with the forum State."

19  *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King Corp. v.*

20  *Rudzewicz*, 471 U.S. 462, 475 (1985)).  Thus, only the defendant's contacts with the

21  forum that are related to a plaintiff's cause of action are relevant to the analysis.  *Id.*

22      The Ninth Circuit has established a three-part test for determining whether a

23  court may exercise specific jurisdiction:

24      (1) the defendant "must purposefully direct his activities toward the forum or

25      purposefully avail himself of the privileges of conducting activities in the

26      forum"

27      (2) "the claim must be one which arises out of or relates to the defendant's

28

1    forum-related activities;" and

2    (3) "the exercise of jurisdiction must comport with fair play and

3    substantial justice, *i.e.* it must be reasonable."

4    *Axiom Foods, Inc. v. Acerchem Int'l., Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017).

5        Other decisions, including a recent decision from this District, consistently

6    reject attempts to establish specific jurisdiction over foreign Nestlé defendants, even

7    where the foreign Nestlé defendants maintained jurisdictional contacts less

8    attenuated than those present here.  In *Nestle USA, Inc. v. Crest Foods, Inc.*, 2017

9    WL 3267665 (C.D. Cal. July 28, 2017), Crest Foods alleged that two Swiss entities,

10   Nestlé S.A. and Societe des Products Nestlé S.A. (SPN), worked directly with an

11   American subsidiary to develop and implement a business plan that allegedly

12   harmed Crest.  In addition, Crest alleged that SPN owned the trademarks at issue in

13   the litigation and was the beneficiary of the written agreements between the plaintiff

14   and a third party. Finding Crest's allegations and affidavits "inadequate to support

15   specific jurisdiction" over the foreign defendants, the Court emphasized that Crest's

16   factual allegations showed nothing more than normal oversight of a subsidiary by a

17   parent company.  2017 WL 3267665 at *7–8; *accord Nespresso USA, Inc. v. Ethical*

18   *Coffee Co. S.A.*, 263 F. Supp. 3d 498 (D. Del. 2017) (dismissing claims against

19   Nestlé S.A. and Nestec S.A. for lack of personal jurisdiction).  As explained below,

20   the facts of this case compel the same result.

21                   **i.    Specific Jurisdiction Over Stuart Raetzman is Lacking**

22       Mr. Raetzman's alleged communications with Truinject fall well below the

23   "minimum contacts" required for the lawful exercise of personal jurisdiction.

24   Truinject attempts to invoke specific jurisdiction by alleging that Mr. Raetzman

25   made several representations "to a business located in California and that such

26   representations resulted in harm in California."  Compl. ¶¶ 38, 159, 161–62, 177,

27   198. However, the only alleged in-person meeting between Mr. Raetzman and Ms.

28

Rios occurred in March 2016 in Washington, D.C. during the annual conference of the American Academy of Dermatology. Raetzman Decl. ¶ 21. Mr. Raetzman visited Washington, D.C. to attend the dermatological conference, and Raetzman met with several other companies during the conference. *Id.* ¶ 22. Except for the meeting in Washington, D.C., all of the "contacts" from Mr. Raetzman alleged in the complaint involve email correspondence with Ms. Rios.

Nothing connects the March 2016 Washington, D.C. meeting to California except the presence of an officer of Truinject, a California corporation. But the Supreme Court has mandated that personal jurisdiction depends on the "defendant's contacts with the forum," not on the defendant's contacts with a plaintiff "who resides there." *Walden*, 571 U.S. at 285; *accord Rush*, 444 U.S. at 332 (rejecting as unconstitutional a view of personal jurisdiction that turns on "the plaintiff's contacts with the forum"). Under *Walden*, Mr. Raetzman's alleged misrepresentation to Truinject at a Washington, D.C. meeting cannot confer personal jurisdiction in California.

Mr. Raetzman's emails to Truinject also cannot confer personal jurisdiction in California. In *Peterson v. Kennedy*, 771 F.2d 1244 (9th Cir. 1985), the Ninth Circuit held that a foreign defendant's communication with a California resident by mail, telephone, or another instrument of interstate communication fails "to qualify as purposeful activity invoking the benefits and protection of the forum state." 771 F.2d at 1262. Under *Peterson*, the allegation that Mr. Raetzman occasionally emailed Truinject, a California corporation, cannot confer personal jurisdiction in this forum. *See, e.g.*, *Joseph Saveri Law Firm, Inc. v. Criden*, 696 Fed. Appx. 189, 192 (9th Cir. June 2, 2017) (applying *Peterson* and holding that an email from an out-of-state defendant to a forum resident cannot confer personal jurisdiction in the forum).

None of Mr. Raetzman's other alleged conduct warrants a different conclusion. For example, Truinject alleges that Mr. Raetzman "sent John Rogers to Truinject" in February 2017 "under the auspices of examining Kate and Truinject's technology." Compl. ¶ 414. But personal jurisdiction depends on the defendant's contacts with the forum, not the contacts of a third party. *Walden*, 571 U.S. at 286 (citing *Rush*). Moreover, there is nothing unlawful about reviewing technology in connection with a proposed transaction.

Truinject also alleges that "Nestlé Skin Health began working on Holly as early as 2015 at the direction of CEO Raetzman. . . ." Compl. ¶ 208. This is not correct and Truinject alleges no facts to support this bare allegation. Mr. Raetzman's declaration confirms that he never directed the development of "Holly" or "LucyLive." Raetzman Decl. ¶ 25. Other than receiving general updates on training technology, Mr. Raetzman lacked any involvement with "Holly" or "LucyLive." *Id.*

The allegation that Truinject suffered harm in California from Mr. Raetzman's alleged misrepresentations also fails to establish personal jurisdiction. In *Walden*, a Nevada resident sued a Georgia police officer in the District of Nevada after the officer seized the Nevadan's money at Hartsfield-Jackson Airport. Reasoning that the Georgia officer must have known that the Nevadan would suffer harm in Nevada from the confiscation, the Ninth Circuit permitted the exercise of personal jurisdiction in Nevada. The Supreme Court reversed and explained that an analysis emphasizing the likelihood that the plaintiff would suffer harm in its residence "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* at 289. Similarly here, Truinject cannot establish personal jurisdiction over a foreign defendant based on allegations of harm in California, where no suit-related contacts with the forum have been identified. *See, e.g.*, *Brook v. McCormley*, 873 F.3d 549 (7th Cir. 2017) (affirming an Illinois court's lack of personal jurisdiction over an Arizona defendant who met in Arizona with the

Illinois plaintiff and called the plaintiff several times).  The result here should be no different.

In any event, "the acts of corporate officers and directors in their official capacities are the acts of the corporation exclusively and are thus not material for purposes of establishing minimum contacts as to the individuals." *Colt Studio, Inc. v. Badpuppy Enter.*, 75 F. Supp. 2d 1104, 1111 (C.D. Cal. 1999); *accord Kransco Mfg., Inc. v. Markwitz*, 656 F.2d 1376, 1379 (9th Cir. 1981) ("A corporate officer who has contact with a forum only with regard to the performance of his official duties is not subject to personal jurisdiction in that forum.") (citations omitted); *Shearer v. Super. Ct.*, 70 Cal. App. 3d 424, 430 (Cal. Ct. App. 1977) (same).  Here, Mr. Raetzman's alleged misrepresentations all occurred in the ordinary course of his employment and in connection with the potential acquisition of the Truinject technology.  Indeed, Truinject alleges that Mr. Raetzman attended the March 2016 meeting "for Nestlé Skin Health." Compl. ¶ 162. Truinject's attempt to extend personal jurisdiction over Mr. Raetzman individually for acts that occurred in the ordinary scope of his employment is therefore precluded.

### ii.  Specific Jurisdiction Over Nestlé Skin Health S.A. is Lacking

Truinject's attempt to establish specific jurisdiction over Nestlé Skin Health S.A. is based on the conclusory allegations that Nestlé Skin Health S.A. has "substantial, continuous, and systematic contacts" in this forum and that Nestlé Skin Health S.A. "enjoys substantial income from sales" in this forum.  Compl. ¶ 36.  But no facts are alleged to support these conclusory allegations.

With respect to the alleged "substantial income" from sales in this forum, Nestlé Skin Health S.A. never sold or demonstrated "Holly" or "LucyLive" in California or anywhere else in the United States.  Raetzman Decl. ¶ 11.  And Nestlé Skin Health S.A. never contracted with Truinject.  *Id.*  ¶ 12.  To the extent Truinject alleges the sale of products unrelated to this litigation, the Supreme Court has

12

DEFENDANTS STUART RAETZMAN'S, GALDERMA S.A.'S, AND NESTLÉ SKIN HEALTH S.A.'S
MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION
CASE NO. 8:18-CV-1851-JLS-JDE

1   repeatedly explained that specific jurisdiction depends only on the defendant's
2   "suit-related" conduct. *Goodyear Dunlop*, 564 U.S. at 923–26 & n.6 ("[E]ven
3   regularly occurring sales of a product in a State do not justify the exercise of
4   jurisdiction over a claim unrelated to those sales."); *Walden*, 571 U.S. at 284.

5       Only three people identified in the complaint ever worked for Nestlé Skin
6   Health S.A:  Stuart Raetzman, Peter Nicholson, and Pierre Streit.  Raetzman Decl.
7   ¶¶ 13–15.  Mr. Raetzman worked for Galderma S.A., not Nestlé Skin Health S.A.,
8   at the time of the March 2016 meeting in Washington, D.C.  *Id.* ¶ 1.  Mr. Streit, the
9   CFO of Nestlé Skin Health S.A., allegedly attended the Washington, D.C. meeting
10  (Compl. ¶ 162),   but nothing about Streit's attendance at a Washington, D.C.
11  meeting connects Nestlé Skin Health S.A. to California or to any of Truinject's
12  causes of action. *See Walden*, 571 U.S. at 285 (explaining that personal jurisdiction
13  "looks to the defendant's contacts with the forum State itself, not the defendant's
14  contacts with persons who reside there.").  Mr. Nicholson, who allegedly sent
15  Truinject one email after the D.C. meeting (Compl. ¶ 170), worked for Galderma
16  S.A., not Nestlé Skin Health S.A., when he allegedly sent the correspondence.
17  Raetzman Decl. ¶ 15 (affirming that Nicholson began working for Nestlé Skin
18  Health S.A. in 2017).

19      Even in the aggregate, the March 2016 Washington, D.C. meeting and the
20  handful of emails to Truinject alleged in the complaint fall well short of the
21  minimum contacts with the forum required to extend personal jurisdiction over a
22  foreign defendant. *See, e.g.*, *Brook*, 873 F.3d at 552–53 (affirming an Illinois court's
23  lack of personal jurisdiction over an Arizona defendant who met in Arizona with the
24  Illinois plaintiff and called the plaintiff several times); *Walden*, 284 U.S. at 283–86
25  (emphasizing that personal jurisdiction requires a "substantial connection" between
26  the defendant and the forum).

27
28

### iii. Specific Jurisdiction Over Galderma S.A. is Lacking

Truinject's attempt to establish specific jurisdiction over Galderma S.A. fails for largely the same reasons. Truinject's allegations that Galderma S.A. has "substantial, continuous, and systematic contacts" in this forum and that Galderma S.A. reaped "substantial income" from sales in this forum are unsupported by well-pleaded facts of any kind. As with Nestlé Skin Health S.A., Galderma S.A. never sold or demonstrated "Holly" or "LucyLive" in California or anywhere else in the United States. Beringer Decl. ¶ 16. And Truinject cannot establish specific jurisdiction over Galderma S.A. by alleging the sale of products unrelated to the technology at issue in this litigation. *Goodyear Dunlop*, 564 U.S. at 923–26 & n.6.

Galderma S.A. employed just two people mentioned in the complaint: Stuart Raetzman and Peter Nicholson (who allegedly sent Truinject one email after the Washington, D.C. meeting). Beringer Decl. ¶¶ 17–19. But neither a Washington, D.C. meeting with a California resident, nor an email from an out-of-state defendant to a California resident, can confer personal jurisdiction in California. *See, e.g.*, *Joseph Saveri Law Firm*, 696 Fed. Appx. at 192 (citing *Peterson*); *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 823–24 (8th Cir. 2014).

Galderma S.A. also signed a November 5, 2014 "Exclusive Negotiation Agreement" with Truinject. By itself, an agreement between a foreign company and a forum resident cannot establish personal jurisdiction in the forum. *Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum . . . the answer clearly is that it cannot.") (italics original).

In *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816 (8th Cir. 2014), which involves facts strikingly similar to this dispute, a California company allegedly "aggressively pursu[ed]" a business deal with an Iowa company, and the two agreed to a due-diligence period "for the purpose of evaluating and negotiating a possible

1   investment [or] acquisition." 760 F.3d at 819.  Also, the two companies agreed to a

2   three-year covenant not to compete that "[was] unlimited in geographic scope." *Id*.

3   After the investment never materialized, the Iowa company sued the California

4   company in Iowa, and the district court dismissed the action for lack of personal

5   jurisdiction.  Applying *Burger King* and *Walden*, the Eighth Circuit affirmed the

6   dismissal because the agreement "did not require performance or contemplate future

7   consequences specifically in Iowa." 760 F.3d at 822.  *Fastpath* explains:

8           The Agreement is not for the actual development or sale of any

9           products in Iowa or elsewhere; instead, it simply permits the

10          parties to exchange confidential information for the purpose of

11          discussing potential future business deals.  Moreover, the

12          agreement is silent as to where the contemplated sharing of

13          information was to take place.

14  *Fastpath, Inc.*, 760 F.3d at 822.

15          Like the agreement in *Fastpath*, the November 2014 Exclusivity Agreement

16  does not demonstrate Galderma S.A.'s intent to invoke the "benefits and

17  protections" of California law and thus to acquiesce to personal jurisdiction in

18  California.  *Burger King*, 471 U.S. at 475 (internal quotation omitted).  First,

19  Galderma S.A. and Truinject agreed to the application of Delaware law, not

20  California law. Second, nothing in the agreement specifically requires Galderma

21  S.A. to perform a contractual duty in California.  Third, the Agreement contemplates

22  a brief time span—a 90-day due-diligence period extendable by 30 days plus a

23  nine-month covenant against competition. *Cf. Burger King*, 471 U.S. at 464 and 480

24  (emphasizing the 20-year franchise contract).  In sum, under *Fastpath* and *Burger*

25  *King*, a short-term agreement that was governed by Delaware law and that never

26  specified or resulted in Galderma S.A.'s performance in California cannot confer

27  specific jurisdiction in California.

28

### D.   Neither Galderma S.A. Nor Nestlé Skin Health S.A. is Subject to Personal Jurisdiction Under an Alter Ego or Agency Theory

Truinject similarly fails to allege any basis for establishing personal jurisdiction over Nestlé Skin Health S.A. or Galderma S.A. based on any alleged in-forum activities of Galderma Laboratories, L.P. "The existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015). "Corporations are treated as separate and distinct entities and the presence of one in a forum state may not be attributed to the other determining jurisdiction." *Crystal Cruises, Inc. Moteurs Leroy-Somer S.A.*, 545 Fed. Appx. 647 (9th Cir. 2013).

A limited exception to this rule of separateness applies when related companies have "such a unity of interest and ownership" that the companies are deemed alter egos. *In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010). To establish alter-ego status in the parent-subsidiary context, a plaintiff must show that the parent has "pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business–from broad policy decisions to routing matters of day-to-day operation." *Ranza*, 793 F.3d at 1073 (internal quotations and citation omitted). A wide variety of factors guide the alter-ego inquiry, including the commingling of funds, unauthorized diversion of corporate funds to other uses, failure to maintain adequate corporate records, sole or family ownership of all of the stock in a corporation, failure to adequately capitalize a corporation, use of a corporation as a conduit for the business of an individual, disregard of legal formalities, and diversion of assets from a corporation to a stockholder to the detriment of creditors. *Schwarzkopf*, 626 F.3d at 1038 (applying California law).

These alter-ego factors are not alleged by Truinject in even conclusory terms. For instance, Truinject fails to allege that another party controls the day-to-day

1    operation of Galderma S.A. or Nestlé Skin Health S.A., fails to allege that Nestlé

2    Skin Health S.A. or Galderma S.A. disregards corporate formalities, and fails to

3    allege the undercapitalization of Nestlé Skin Health S.A. or Galderma S.A. *See, e.g.*,

4    *Iconlab Inc. v. Valeant Pharma. Int'l., Inc.*, 2017 WL 7240856 at \*5–\*6 (C.D. Cal.

5    Apr. 25, 2017) (Staton, J.) (dismissing claims for lack of personal jurisdiction

6    because the allegations failed on their face to invoke personal jurisdiction under an

7    alter-ego theory).

8         Truinject's only relevant allegation is that Galderma S.A. "acts at the direction

9    of, under the control of, and for the benefit of Nestlé and Nestlé Skin Health."

10   Compl. ¶ 30. Ninth Circuit law is clear that such a conclusory allegation unsupported

11   by facts cannot create personal jurisdiction under an alter-ego theory. *Williams v.*

12   *Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1020–22 (9th Cir. 2017) (affirming a

13   Rule 12(b)(2) dismissal because the plaintiff failed "to plead facts sufficient to make

14   out a prima facie case" to exercise personal jurisdiction under an alter-ego theory).

15        Beyond these fundamental pleading deficiencies, the record establishes that

16   Nestlé Skin Health S.A., Galderma S.A., and Galderma Laboratories L.P. are all

17   separate and distinct corporate entities that respect the corporate form.  For instance,

18   Nestlé Skin Health S.A. and Galderma S.A. each controls its own day-to-day affairs,

19   follows corporate formalities such as maintaining recordkeeping and payroll, and is

20   adequately capitalized. Raetzman Decl. ¶¶ 17–18;  Beringer Decl. ¶¶ 12–14.

21        Courts have previously refused to extend jurisdiction over foreign Nestlé

22   corporate defendants based on the activities of U.S. affiliates and subsidiaries under

23   these circumstances. *In re Chocolate Confectionary Antitrust Litig.*, 641 F. Supp. 2d

24   367, 391–99 (M.D. Pa. 2009) (reasoning that foreign parent "Nestlé S.A. performs

25   a variety of functions typical of a foreign parent corporation sitting atop a global

26   corporate network, and its actions are typical of any parent corporation engaged in

27   building brand identity across national boundaries."); *Nespresso USA, Inc. v. Ethical*

28

*Coffee Company S.A.*, 263 F. Supp. 3d 498 (D. Del. 2017) (rejecting attempt to subject foreign Nestlé defendants to personal jurisdiction based on their purported control over an American subsidiary).  The same conclusion is warranted here.

## CONCLUSION

For the reasons explained above, Mr. Raetzman, Nestlé Skin Health S.A., and Galderma S.A. respectfully request dismissal for lack of personal jurisdiction.


Dated: March 11, 2019


                                        MAYER BROWN LLP
                                        By: /s/ Dale J. Giali
                                        Dale J. Giali

                                        *Counsel with special limited appearance for Defendants Stuart Raetzman, Nestlé Skin Health S.A., and Galderma S.A.*